## INSURANCE COMPANIES v. THOMPSON.

Certain insurance companies insured T. & Co. against loss or damage by fire "upon whiskey, their own or held by them on a commission, including government tax thereon for which they may be liable." They were so liable as sureties on the bond of the distiller in whose warehouse the whiskey was. The whiskey belonged to them, and was destroyed by fire; and the amount of the loss apart from the tax was paid by the companies. The tax was not paid; and, suit having been brought against T. & Co. on their bond, the companies, although thereunto requested, declined to defend it. Judgment was rendered against T. & Co., who thereupon gave in due form a bond which, under the laws of Kentucky, operated to satisfy the judgment; and they brought this action against the companies for the amount thereof. *Held*, 1. That the interest of T. & Co. in the whiskey, by reason of their liability to pay the government tax, was an insurable one. 2. That the policy was intended to furnish indemnity against that liability, as well as to insure the interest which, at the time of the loss, they had as owners of the whiskey. 3. That the companies are liable to them for the amount of the judgment so rendered.

ERROR to the Circuit Court of the United States for the District of Kentucky.

The facts are stated in the opinion of the court.

*Mr. Charles W. Jones* and *Mr. J. Hubley Ashton* for the plaintiffs in error.

*Mr. G. C. Wharton, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The defendants in error recovered in the Circuit Court of the United States for the District of Kentucky a joint judgment for $3,317.58 on a policy of insurance issued by The Germania Fire Insurance Company, The Hanover Fire Insurance Company, The Niagara Fire Insurance Company, and The Republic Fire Insurance Company, on whiskey in a distiller's bonded warehouse. The distillery and the warehouse were owned and conducted by George H. Dearen, but the spirits were distilled for and owned by the defendants in error at the time the policy was issued. They were also sureties on Dearen's distillery bond to the United States, and as such were liable for the tax on the whiskey if not paid by Dearen, or made out of the whiskey. It will be thus seen that Thompson & Walston had two distinct interests in the whiskey; namely,

the general ownership of it, and their liability for the tax on it which Dearen had assumed to pay, and which, if he did not pay, might fall upon them in either of two ways, — to wit, by a seizure and sale of the whiskey for the tax by the government, or by a suit on the bond on which they were sureties. The policy, which was manifestly designed to protect both these interests of the assured from loss or damage by fire, was for that reason peculiar and special in its provisions. By its terms the companies bind themselves to "insure Messrs. Thompson & Co. against loss or damage by fire to the amount of $8,000, for the term of one year, upon whiskey, their own or held by them on a commission, including government tax thereon for which they may be liable, contained in the log bonded warehouse of G. H. Dearen."

After the whiskey was burned, these companies paid their share with others of the loss on the value of the whiskey apart from the tax; but by the receipt which they took it was stated that the claim for liability on account of tax remained undecided. Thompson & Co. were sued on their bond with Dearen for this tax; and they notified the insurance companies of the suit, and asked them to defend it, which was declined. Judgments were obtained in each case on the bonds, and Thompson & Co. replevined the judgments. By this is meant that they gave bail which operated as a stay of execution for the period which the law of Kentucky allowed in such cases. The present action was brought by Thompson & Walston to recover the amount of these judgments.

On the trial, evidence was given tending to show that before the fire Walston had sold to his partner, Thompson, all his interest in the partnership, and that Hite Thompson had become interested with the other Thompson in the business to the extent of one-fifth. And, on the hypothesis that the jury believed this, the counsel for the companies asked the court in several forms to instruct the jury that plaintiffs could not recover. This proposition was based on a provision in the policy that it should be void "if the property be sold, or transferred, or any change take place in title or possession, whether by legal process, or judicial decree, or voluntary transfer or conveyance."

The refusal of the court to do so, and the charge of the court

to the effect that this change in regard to the ownership, if true, did not defeat the right to recover the amount of the judgments against plaintiffs for taxes, are the errors on which a reversal is asked.

The argument of counsel on the effect of a mere change in the title by one partner selling to another his interest in the property insured, and the authorities presented on both sides, are very able and full, and the decisions are conflicting. So, also, the effect of the introduction of a new part-owner, in a case like the present, where the possession and care of the goods remain unchanged, are well considered; but in the view we take of the case it is not necessary that this court should decide these questions.

We are of opinion that a careful consideration of the facts of this case, in their relation to some of the most elementary principles of the contract of insurance, will enable us to dispose of it without much difficulty.

It is to be observed, that, whether insurance be against fire, or marine loss, or loss of life, it is neither the property nor the life that is insured. Nor does the contract propose or intend to say that there shall be no destruction of the property or loss of life. In point of fact, the obligation of the insurer is designed to come into operation after the loss either of property or life has occurred, and to give compensation to some one interested in the life or the property, for the loss of that life or injury to the property.

In regard to property this compensation is intended by the fundamental principles of insurance to bear a direct relation to the moneyed value of the interest which the party insured had in the property. Where the only interest of the assured is the full and perfect ownership of the property, that is the interest insured; and the amount to be recovered on the policy of insurance is that full value or such sum less than that as the insurer stipulates to be liable for.

But it often occurs that the interest of the party insured is not that of full ownership. His interest may be that of a trustee, or executor, or some other representative character, in which case the recovery will be in accordance with the nature of the contract. The policy before us is a striking illustration

of this. The interest of the plaintiffs in the whiskey which is insured is threefold, — their own, or held on a commission, and the government tax, for which they may be held liable. It the makers of this policy intended to insure no other interest of Thompson & Co. in the whiskey than their proprietary interest, the interest which at the time of the loss they had as owners of the whiskey, the enumeration of the two other interests was useless and misleading. The facts already stated show that they had another interest; and, since they insured it, it must be presumed that it was known to the insurers. The whiskey which they owned was liable to the government for a tax; and this Dearen was primarily liable for and had promised to pay, but, if he did not, the whiskey could be sold for it. They had also become bound with him on his bond for the payment of this tax. In the event of the whiskey being destroyed by fire, the danger of their personal liability was greatly increased. They were, therefore, right in wishing to be secured against this loss also, if the whiskey was burnt. It is impossible to give any other construction to the policy than that the company agreed to furnish this indemnity. The language, when brought into relation with the conceded facts of the case, admits of no other.

This interest was an insurable interest, as much as freights at sea or profits in an adventure. The whiskey stood between them and their loss. The whiskey when in the warehouse was loaded with this tax. It would sell for as much less as the tax, unless the tax was paid. So long as it was in the warehouse, plaintiffs were not liable for the tax. The moment it was lost they became liable. This was a fair subject of insurance. *Fireman's Fire Insurance Co.* v. *Powell*, 13 B. Mon. (Ky.) 311; *Gordon* v. *Massachusetts Fire & Marine Insurance Co.*, 2 Pick. (Mass.) 249; *Rohrbach* v. *Germania Fire Insurance Co.*, 62 N. Y. 47.

In regard to this interest, Walston had never parted with it. His sale of the partnership interest did not release him from his liability on Dearen's bonds; nor did the subsequent purchase of Hite Thompson of one-fifth interest in the whiskey have that effect, or destroy Walston's interest to that extent in the whiskey. As to him, it is very clear that he had the strong-

est interest that the whiskey should be secure from fire until the tax on it was paid, since its continued existence was his best, if not his only, security against liability on the bonds.

It is to be observed that no other interest of Thompson & Co. is in issue in this suit. They never held the whiskey on commission, and the loss in regard to the proprietary interest had been paid by the companies. This was another and a different interest in the same property. A man might insure his interest in property as an executor, and his interest as a legatee. His removal from the office of executor by the proper court might, within the terms of this policy, prevent his recovering in that character; but if his interest in the property as legatee was one-sixth, would the change of executorship bar his recovery as legatee? This would hardly be asserted by any one.

It is objected further to a recovery that plaintiffs have not actually paid the judgment. The answer to this, if any were necessary, is that by the law of Kentucky the replevin bond is a satisfaction of the judgment. It is as to this obligor a debt discharged. It is said that, in case of a loss like this, the government cannot collect the tax from the bondsmen. The answer is, that the government has sued and obtained judgment for the tax; and defendants were asked to defend that suit, and declined to do so.    *Judgment affirmed.*