## AMERICAN INS. CO. v. GENTILE BROS. CO.

### No. 9261.

Circuit Court of Appeals, Fifth Circuit.

Feb. 9, 1940.

Rehearing Denied March 15, 1940.

Edgar John Phillips and Harry L. Thompson, both of Clearwater, Fla., for appellant.

Hugh Akerman and William H. Dial, both of Orlando, Fla., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

On application The American Insurance Company issued its policy of insurance to Gentile Brothers Company, a corporation. The policy issued in July, 1937, insured against loss by freeze, tornado, and windstorm to citrus fruits on twenty-five groves in the Florida citrus belt.

The insurance contract was clear, explicit, and unambiguous. The amount of insurance under the policy was $150,000; the subject of the coverage was the citrus fruit on twenty-five named and described groves; the citrus fruit was described as oranges, grapefruit, and tangerines. The policy covered tangerines and Temple Oranges up to and including January 15, 1938. Other citrus fruits were covered to March 15, 1938, with the exception of Valencia Oranges and Marsh Seedless Grapefruit which were covered to April 15, 1938. Coverage for damage by freeze extended only to the fruit on trees and did not apply unless the extent of the damage was ten per cent or more. In the event of damage by freeze to the extent of ten per cent or more it was expressly provided that the remaining fruit in the orchards, "damaged and undamaged", was to be salvage; that the insured was to have the remaining fruit harvested and, after deducting the cost of harvesting and selling, account to The American Insurance Company for the proceeds of sale. Before the contract of insurance was entered into the number of boxes of fruit on the trees was estimated by experts representing both parties, and it was agreed by the insurer that there were 187,500 boxes on the trees.

Each box of fruit on the trees was insured for 80¢ as is shown in a typewritten rider attached to the policy and which

carries this clause: "Total Number of Boxes—187,500 insured for 80¢ per box for total liability of $150,000.00. Rate 5%. Premium $7500.00." Signed in ink "J. T. Branham, Special Agent."

In December, 1937, a severe freeze damaged fruit in the groves much above the ten per cent designated by the policy. On April 17, 1938, Gentile Brothers Company submitted its proof of loss to the insurance company. This notice showed that 47,681 field boxes had been harvested before the freeze leaving 139,819 boxes on the trees covered by the policy, and that this remaining unharvested fruit had been salvaged and disposed of for $26,537.94.

The insurance company failed and refused to pay on demand the amount of insurance, less salvage, on the 139,819 boxes of fruit which remained on the trees at the time of the freeze. On June 1, 1938, Gentile Brothers Company filed suit against The American Insurance Company in the Circuit Court of Orange County, Florida. It filed its declaration on July 2, 1938, and on motion the cause was removed to the District Court of the United States for the Southern District of Florida. After removal the defendant filed its motion to dismiss and a motion for a more definite statement in the complaint. These motions were heard by the court and denied on October 31, 1938. On the Rule Day in December the defendant filed its answer consisting of four defenses. The plaintiff moved to dismiss the counterclaim set up in the fourth defense and to strike portions of the answer. These motions, except as to a portion of the second defense, were granted on December 27, 1938. On January 16, 1939, the defendant filed its amended answer consisting of six defenses. The plaintiff moved to strike portions of the amended answer and the court granted the motion on March 30, 1939. Thereafter the defendant filed a seventh defense which was stricken on motion on May 26, 1939. After these many delays and on July 5, 1939, the plaintiff filed its motion for summary judgment.

On April 25, 1939, after proper notice, the defendant took depositions of the witnesses G. D. Murrill and J. E. Stewart, the men who had estimated the box yield of the groves. The depositions were taken by agreement of counsel at the offices of the plaintiff's attorneys. In its motion for summary judgment the plaintiff set out the condition of the pleadings, and the fact that the depositions on file showed conclusively that at the time of the freeze there were 187,500 boxes of fruit on the groves less any and all fruit that had been harvested and shipped prior to the freeze. The motion further recited that the supporting affidavits of Fred D. Frey, Chief Clerk of Gentile Brothers Company, and A. R. Davenport, Secretary-Treasurer of Tree-Gold Cooperative Growers of Florida, showed clearly that up to the date of the freeze 47,681 field boxes of fruit had been harvested and shipped from the groves; that on this basis there were 139,819 unharvested boxes on trees when the freeze came; and that the affidavit of Victor Gentile, Vice-President of Gentile Brothers Company showed that proper proof of loss had been submitted to the insurance company and receipted for by its duly authorized representative.

A copy of the motion for summary judgment and the exhibits were served on counsel for The American Insurance Company. The defendant did not file counter-affidavits controverting the facts set forth in the depositions and affidavits, and made no effort to show that controverting facts, if any, could be presented at a later time. The motion for summary judgment was heard and, after argument of counsel and due consideration of the contents of the depositions, affidavits, and pleadings, the court entered judgment for the plaintiff and The American Insurance Company brings this appeal.

The policy of insurance is made a part of the declaration of the plaintiff. The appellant's attack on the sufficiency of the declaration is without merit.

The appellant contends that its contract of insurance is an "open policy" and not a "valued policy" as defined by the courts. When we come to measure the contract with the legal definition of "valued" policies, its provisions speak out what it is and declare it to be a *valued insurance contract.* Under the terms and provisions of the policy all twenty-five groves were to be considered as a unit in the event of a freeze, and the contract is explicit in the statement that 187,500 boxes of citrus fruit on the groves are insured for 80¢ per box,—*no more and no less.* Moreover, the premium is figured on this basis; namely, 5%, or 4¢ per box on 187,500 boxes—$7,500. The experts measured the yield and the figures were all agreed upon beforehand by the insurer and the insured,

and the price of 80¢ per box definitely fixed the value of the fruit for the purposes of the insurance contract. The intention of the parties to enter into a valued policy contract is further demonstrated by clause "C" of the instrument which provides, "The total acreage and all Citrus Fruit hereunder insured and all proceeds therefrom shall be considered as a unit in the ascertainment of loss, if any, hereunder, subject to limitations and provisions elsewhere in this application and policy"; and then the salvage clause, "In case of loss hereunder all unharvested fruit whether damaged or undamaged, shall for the purpose of this insurance be considered salvage and this company shall be credited with the f. o. b. market value of such fruit." These provisions answer every material defense contended for by the defendant. Firmly fixing liability at 80¢ per box, under these quoted provisions the defendant might stand to recoup much, if not all, of its loss in the event prices of fruit advanced following a freeze.

■ In a valued policy the value of the subject matter is agreed upon beforehand. If there is anything in the policy which clearly indicates an intention on the part of the insurer to value the risk and loss, in whatever words expressed, the policy is valued. In this contract the value of the risk was clearly expressed. There is no escape from the conclusion that the contract is a valued policy. 1 Couch on Insurance, p. 105; 13 Am. & Eng. Law, 2d Ed. Vol. 13, p. 102; St. Paul Fire & Marine Ins. Co. v. Pure Oil Company, D.C., 58 F.2d 393; St. Paul Fire & Marine Ins. Co. v. Pipkin, Tex.Civ.App., 207 S.W. 360; Fidelity Union Fire Ins. Co. v. Mitchell, Tex.Civ.App., 249 S.W. 536; Fidelity Union Fire Ins. Co. v. Hicks, Tex.Civ. App., 250 S.W. 1084; Hartford Live Stock Ins. Co. v. Gibson, 256 Ky. 338, 76 S.W.2d 17; Lawver v. Globe Mutual Ins. Co., 25 S.D. 549, 127 N.W. 615; Cox v. Charleston Fire & Marine Ins. Co., 3 Rich., S.C., 331, 45 Am.Dec. 771.

■ The appellant seeks to have us strike from the record the depositions of Murrill and Stewart for the reason that the seals were not broken by the court. These depositions were taken at the request of the defendant. By agreement the depositions were taken in the offices of counsel for the plaintiff, and were then by direction of the defendant's counsel filed in court in this case. Each party to the suit was provided with a copy of these depositions; their contents were relied upon by the plaintiff in its motion for summary judgment and were treated by the court and counsel as being before the court when the motion was heard. The contents of the depositions were not then disputed and they were properly made a part of the record.

■ The appellant contends that the granting of the motion for summary judgment deprived it of its right of trial by jury. It complains that the declaration and affidavits in support of the motion for summary judgment show only the "net" proceeds from the sale of salvaged fruit instead of the f. o. b. market value. Under the terms of the contract "f. o. b. market value" is defined to mean actual gross "f. o. b. sale price" less "allowance for actual harvesting and selling charges". In the affidavit of Fred D. Frey it is stated that the "net" sum of $26,537.-94 was arrived at "by taking the total sales proceeds of said fruit and deducting therefrom the actual cost to Gentile Bros. Company of picking, packing, and hauling, and that said charges for said services do not exceed the amount set forth in the policy of insurance * * * ." The affidavit of A. R. Davenport is to the same effect. These affidavits clearly show that the "net" proceeds reported were the same as the "f. o. b. market value" as defined in the contract.

■ Rule 56, 28 U.S.C.A. following section 723c, clearly provides that a summary judgment should only be awarded when the pleadings, depositions, admissions, and affidavits, if any, disclose that except as to the amount of damages there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Under this rule a summary judgment should only be given when it is quite clear what the truth is. When we come to weigh the several defenses insisted upon by the appellant and then place them beside the valued policy of insurance, there was and cannot be found a material jury question. Cf. Port of Palm Beach District v. Goethals, 5 Cir., 104 F.2d 706, 709.

■ Faced with the motion for summary judgment the appellant did not file counter-affidavits, but objected and excepted going over its original stricken defenses which, as we have shown, its insurance contract decided fully and fairly against it. The pleadings, depositions, and supporting affidavits clearly show that the

policy issued was a valued one on 187,500 boxes of fruit at 80¢ per box; that 47,861 boxes had been harvested and shipped before the freeze; that nothing had intervened to decrease the number of boxes on the groves; that 139,819 boxes remained on the groves unharvested; that salvage operations were carried out in conformity with the contract; that the salvage opererations produced $26,537.94 which was credited to the insurance company; and that the balance due under the contract was merely a matter of simple calculation. When the motion for summary judgment was heard there was no genuine issue as to any material fact and the court properly entered judgment for the plaintiff. Rule 56, Rules of Civil Procedure for the District Courts.

The judgment is affirmed.