**RUGG, Plaintiff-Appellee, v. OFFICE OF PRICE ADMINIS-
TRATION, et., Defendants-Appellants.**

Ohio Appeals, Second District, Franklin County.

No. 3789.   Decided May 25th, 1945.

James I. Boulger, Columbus, and Rodney B. Baldwin,
Columbus, for plaintiff-appellee.

Thomas I. Emerson, Deputy, Administrator for Enforce-
ment, Fleming James, Jr., Director, Litigation Division, David
London, Chief, Appellate Branch, Nathan Siegel, Attorney,
Office of Price Administration, Washington, D. C. Walter J.
Heddesheimer, Regional Litigation Attorney, Cleveland, Wil-
lard D. Campbell, District Enforcement Attorney, J. Maxwell
Maher, Attorney, Columbus, for defendants-appellants.

## OPINION

By MILLER, J.

This is an appeal on questions of law from the Probate
Court of Franklin County, Ohio, wherein an order was issued
that Donna M. Rugg, Admnistratrix, Plaintiff-Appellee, sell a
tractor, a cornplanter and a tractor plow at public sale for

Errata:—The fourth word in the fourth line of the headnote (above) should
be "estate" instead of "state."

the best prices obtainable notwithstanding that such prices may be greater than the maximum ceiling prices established for these commodities by the Office of Price Administration.

This matter came before the Court upon a petition for a declaratory judgment filed by Donna M. Rugg as Administratrix of the estate of Robert D. Rugg, deceased, and as an individual, against the Office of Price Administration, of her right to sell certain personal property of the estate consisting of farm machinery, at a price in excess of maximum ceiling prices established by the Office of Price Administration. The petition alleges briefly the following:

The property of the deceased consisted, among other things, of a 1940 general tractor; one Avery cornplanter; one tractor cultivator and one John Deere tractor plow. The administratrix offered this property at public sale and a large number of prospective bidders bid the ceiling price as established by the Office of Price Administration. The auctioneer refused to receive any bids in excess of the prices as fixed and then proceeded to choose the successful bidders by lot. The Court refused to confirm this sale for the reason that the administratrix had not complied with §10509-90. This section provides that the Probate Court may authorize an executor or administrator to sell at public sale or at private sale all of the personal property belonging to the estate. Sec. 10509-91 GC provides that public sales of personal property shall be at public auction.

On March 2, 1944, the Court below made an order to the administratrix to sell this farm machinery at the best price obtainable, even though it be greater than the ceiling price fixed by the Office of Price Administration. Prior to the sale above mentioned the administratrix was ordered by the office of Price Administration to refrain from selling any of the above described property at a price higher than the ceiling as fixed by the Office of Price Administration. The administratrix being in doubt as to her rights and duties then filed this proceeding for declaratory judgment requesting the Court to find that the ceiling prices established by the Office of Price Administration do not apply to judicial sales. After the filing of this petition the Price Administrator filed an action in the District Court of the United States for the Southern District of Ohio, praying for an injunction enjoining the sale of this farm equipment in violation of the ceiling prices. The District Court denied the injunction on the ground that adequate relief could be obtained in the state court, since that Court was bound by the provisions of the Constitution of the United States and the laws of the United States in the same manner as were the federal courts.

An answer was filed by the defendant which denied that the Probate Court had jurisdiction to pass upon the validity of any of the regulations issued by the Office of Price Administration. The Court came to the conclusion that the sale of the farm implements was not subject to price control, and thereupon entered a judgment directing the administratrix to sell the farm equipment for the best price obtainable.

It is the contention of the plaintiff, and the trial court held that Congress did not intend that the Price Administrator should be granted the power to regulate judicial sales; that since this power was not granted to the Price Administrator any ceiling price fixed by him would be void. The contention that a regulation is not authorized by statute raises the challenge, we think, that the regulation is invalid.

The Court below was barred from considering the validity of the regulation in view of the provisions of Section 204(d) of the Act which vests the determination of that question exclusively in the Emergency Court of Appeals and in the Supreme Court of the United States upon certiorari. Section 204(d) reads in part as follows:

"The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals shall have exclusive jurisdiction to determine the validity of any regulation or order issued under Section 2 * * * and of any provision of any such regulation, * *. Except as provided in this section, no court, federal, State or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, * * * or to stay, restrain, enjoin, or set aside in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders * * *, or to restrain or enjoin the enforcement of any such provision."

Pursuant to the power vested in him by Section 2, the Administrator issued Maximum Price Regulation No. 133, as amended, establishing ceiling prices on the sale of new and second hand farm machinery, the sale of which commodity is involved in this proceeding.

Section 1361.1 of the Regulation provides:

"On and after May 11, 1942, regardless of any contract, agreement, lease or other obligation:

(1) No person shall sell, deliver, or negotiate the sale of any farm equipment at a price higher than the maximum fixed by this regulation; * *."

Section 1361.3a of the Regulation provides:

"Maximum Prices for Used Equipment:
(a)    Applicability of this section.    This section is applicable to sales by all persons of the following items of used farm equipment:
(1)    Combines.
(2)    Corn binders.
(3)    Corn pickers.
(4)    Farm tractors and garden tractors, etc., * * *.
(5)    Etc. * * *."

Section 1361.9 (a) of the Regulation defines "person" as follows:

"Person includes an individual, corporation, partnership, association, * * * or legal successor or representative of any of the foregoing, and includes the United States or any agency thereof, or any other government, or any of its political subdivisions or any agency of the foregoing."

We think the intent of Congress in withholding from all courts but the Emergency Court of Appeals, the power to determine the validity of the Regulation, is apparent from the Senate Report on the Act. (Sen. Rep. No. 931, 77th Cong., 2nd Sess. pp. 24, 25, (1942) ): ·

"It (the Emergency Court) * * * may examine the entire record before the Administrator to determine whether he has acted in accordance with the statute, whether the procedure that he has followed is in accordance with accepted standards of due process of law and whether he·has exercised a reasonable judgment on questions committed to his discretion.
* * * * By applying these standards the (Emergency) Court of (Appeals) has ample power to keep the Administrator within the bounds prescribed by the bill.
Section 204(d) further provides expressly that no court other than the Emergency Court and the Supreme Court shall have jurisdiction or power to consider the validity, constitutional or otherwise, or any regulation or order issued under Section 2.
                *              *              *
It also provides that no court, except as provided in Section 204, shall have jurisdiction or power to stay, restrain, enjoin or set aside (whether by declaratory judgment or otherwise) any provision of the bill authorizing the issuance of such

regulation or order, or to restrain or enjoin the enforcement of any provision of any such regulation or order."

It seems apparent from these reports that Congress intended that one of the matters to rest in exclusive jurisdiction of the Emergency Court of Appeals was authority to determine whether a  challenged regulation is in accordance with law.

The constitutionality of the Emergency Price Control Act is not involved in this action. This question was settled, the constitutionality being upheld in the case of Yakus v. United States, 321 U. S. 414, and decided on March 27, 1944. Quoting from this case on page 429, Mr. Chief Justice Stone said:

"In Lockerty v. Phillips, supra, (319 U. S. 192) we held that these provisions, conferred on the Emergency Court of Appeals, subject to review by this Court, exclusive equity jurisdiction to, restrain enforcement of price regulations of the Administrator and that they withdrew such jurisdiction from all other courts. This was accomplished by the exercise of the constitutional power of Congress to prescribe the jurisdiction of inferior federal courts, and the jurisdiction of all state courts to determine federal questions, and to vest that jurisdiction in a single court, the Emergency Court of Appeals."

A more recent decision is that of Bowles, Administrator, v. Texas Liquor Control Board, in the United States Circuit Court of Appeals for the Fifth District, and being case No. 11298, decided on March 23, 1945. In this case the Texas Liquor Control Board, an instrumentality of the state of Texas, threatened to sell at public auction to the highest bidder, for cash, a quantity of liquor that the State had obtained by forfeiture from offenders against the law. The Administrator of the Office of Price Administration sought to enjoin the sale on the ground that the State had not applied to the O. P. A. for a maximum price thereon as required by the regulations promulgated under the Emergency Price Control Act. The Court denied the injunction and the Administrator appealed. One of the contentions of the Texas Liquor Control Board was that the regulation did not apply to it. In reversing the lower Court, Judge Holmes said:

"The further contention is made that Texas is not bound to yield to the regulation because the underlying act of Congress does not apply to it. This seems to be the equivalent of saying that the regulation is invalid because it is not in har-

mony with and does not tend to effectuate the cardinal purposes of the law. Since exclusive jurisdiction to determine the legality vested in the Emergency Court of Appeals, the invalidity of the regulation may not be urged as a defense to this action."

Davis Warehouse Co. v Bowles, 321 U. S. 144.

Yakus v U. S., 321 U. S. 414.

Bowles v Nuway Laundry Co., 144 F. (2) 714.

Counsel for the plaintiff has filed a voluminous brief in which many reasons are given why the regulations should not apply to a judicial sale. These arguments can only be met and considered by the Emergency Court of Appeals, and therefore they will not be further considered by this Court.

It is our conclusion that the ruling of the Probate Court constituted a determination of the validity of the regulation promulgated by the Administrator of the Office of Price Administration, which was not within the jurisdiction of the trial court. It is a well-settled principle of statutory construction that instead of being astute to overturn a statutory method of review on some strained and technical reasoning, it should try, if at all possible, to sustain it. (Sutherland, Statutory Construction (3rd Ed. Vol. 3, pp. 442, 446.)

In the case of McDugle v Elson (S. D. Ill. 1943, 1 O. P. A. Op. and Dec. 933) decided by a three judge court, it was said:

"Now, you say you are not attacking the validity of the regulation, you are only asserting that the regulation is not applicable to the state of facts in your case, but in my judgment you are saying so far your state of facts is concerned the regulation is invalid, and it is just a play on words to say that you really are not attacking the validity of it, that you are saying that it is not applicable to you, you are saying it is invalid as far as your facts are concerned."

The purpose of the plan of procedure under Section 204(d) of the Act was to prevent the disorganization and disruption which would ensue if the enforcement of price regulations were delayed or the subject of conflict in different parts of the country. Congress sought to minimize these difficulties by compelling resort to an administrator for a review of his regulations and to afford him an opportunity to modify or revoke such regulations or orders before judicial determination of the validity was invoked and before judicial review by the Emergency Court of Appeals and the Supreme Court on certiorari.

The judgment of the trial court is reversed and cause remanded, at the plaintiff's costs.

HORNBECK, P. J., concurring:

The trial judge had jurisdiction to determine if the Emergency Control Act of 1942 empowered the Administrator to issue the order under consideration. If there was no power or authority granted by the Act to the Administrator, appellant, to make an order fixing ceiling prices on fiduciaries' sales, then the regulation issued was wholly without effect and the question of its validity or invalidity was not the issue. A fortiori, if the Act was broad enough to include the subject of the regulation, then its validity may be tested only in the Court which by the Act was vested with exclusive jurisdiction to determine that question.

If the sale here under consideration was that of the administratrix, clearly the language of the Act applied to her by the definition therein of "person", which includes an individual "or legal successor or representative".

The trial judge was of opinion that the administratrix's sale was that of the Court itself, a judicial sale, and that such sales were not included in the language of the Act. There is much logic in the view taken by the trial judge and he has some support from the authorities. However, we have had the advantage, denied the trial judge, of two decisions of courts of high authority, both of which support and strengthen the claim of the appellant administrator, Bowles, Admr., etc., v Texas Liquor Control Board, et al., U. S. Circuit Court of Appeals for the 5th District, 146 F. (2nd) 842, decided March 23, 1945, and Culien, Trustee, v Bowles, Admr., etc., U. S. Circuit Court of Appeals for the 2nd District, decided April 4, 1945, not yet reported.

The latter case, in reversing the U. S. District Court for the Southern District of New York, held invalid an order of a bankruptcy court directing a trustee of a debtor to collect rents chargeable under existing leases and to abstain from filing notices of maximum rent, under the regulations of the Office of Price Administration, and adjudging that the powers of the Court and of the trustee are not limited by the Emergency Price Control Act of 1942. The basis of the holding of the District Court was much like that adopted by the trial court here, but the reviewing court held that regulations fixing ceiling rentals issued under authority of the Emergency Price Control Act were effective to preclude a court by judicial order nullifying the effect of the regulation.

The former case reversed a judgment of the District Court of the United States for the Western District of Texas.

The cited case does not expressly consider or discuss our immediate question, but inferentially it is determined. See also Bowles, Admr., etc., v Texas Liquor Control Board, et al., 146 F. (2d), 155, and the action of the trial court was affirmed.

We are disposed to follow the federal cases just cited and discussed, as the question for consideration is the construction of a federal statute.

As the Act has application to judicial sales, then the regulation under consideration was not void and its validity can only be reached by recourse to the Emergency Court of Appeals.

It is urged that the Act is unconstitutional as in violation of the "due process" clause of the Federal Constitution, but the cases of Bowles v American Brewery, Inc., supra, Yakus v U. S., 321 U. S. 414, and Lockerty v Phillips, 319 U. S., 182, are authority for the proposition that the Emergency Court of Appeals is given exclusive jurisdiction over questions as to the validity of price regulations, whether such validity be tested by constitutional requirements, by the grant of power in the statute under which they were adopted, or by modifications made in that grant of power by subsequent legislation.

GEIGER, J., concurring:

I regret that the determination of this case must be confined within the limits of Section 204 (d), above quoted, which provides that the Emergency Court shall have exclusive jurisdiction and that no other Court shall have jurisdiction to consider the validity of any regulation or to enjoin any provision of the act. The case is decided upon the narrow question that the Probate Court of Franklin County in which the property of the decedent is being administered has no power in the face of the federal section to render a declaratory judgment. On account of such limitation we must leave totally undecided the question as to whether or not the federal administrator has a right to fix a ceiling price upon property of a decedent being administered within the jurisdiction of the local Probate Court. I am in accord with the decision of the Probate Court holding in substance that Congress by the passage of the Act had no intention to nullify the provisions of the state law in reference to the sale of the personal property of decedents. The Emergency Price Control Act provides that it is in the interest of national defense and security and necessary to the effective prosecution of the war; that the purposes are to stabilize prices and to prevent speculative, unwarranted and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation,

speculation and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency. One cannot read the purposes of the act and come to any conclusion that any of the purposes enumerated in the act could in any way be effectuated or influenced by the control of the prices at which a decedent's property should be sold. The sale of property by administrators has no relation to the purpose of the Act to avoid the inflation of prices or to permit of profiteering and other harmful activities which might prevent the successful prosecution of the war. The sale of such property by administrators is only occasional and has no appreciable influence upon the prices at which commodities are sold in the open market. There is no possibility of an administrator's sale continuing beyond the point where the property of the decedent is disposed of and converted through an administrator's sale into cash. There can be no method by which the property once sold can be replaced to be resold, or its volume replenished so as to be thrown into the market to in any way affect the commodity prices. On the other hand, the denial to the administrator of the right to dispose of property of the decedent would lead to many hardships and rather ridiculous situations. For example, in the case at bar, the auctioneer following the ceiling price fixed by the Price Administrator, refused to accept any further bids after the ceiling price was reached, and thereupon being called upon to determine who was the successful purchaser resorted to the device of choosing such successful purchaser by lot, a method not provided for by any statute in the administration of estates.

In order to avoid the limitations of the fixed ceiling prices administrators have been known to offer for sale some article upon which there is no ceiling price with the understanding that the purchaser of that article is to have the right to take the article which is controlled by the ceiling price at such ceiling price. A bale of hay may be the instrumentality through which the purchaser of such hay may be given the right to take the other property at the ceiling price. Of course such illegal sales could be prevented, but nevertheless they will be resorted to because there is a strong feeling that the administrator should not be restrained or prevented from obtaining as much money as possible from the sale of the decedent's goods, for the manifest reason of taking care of the debts of his estate, and the rights of the widow and children. However, we are confronted with Section 204(d) above quoted, wherein the Emergency Court is given exclusive jurisdiction to determine the validity of any order made by the Price Ad-

ministrator, and on account of that provision, the constitutionality of which is not in any way questioned, the Probate Court in the case at bar is deprived of the power to render an effective declaratory judgment. It is probable that the Administrator will not proceed in the Emergency Court of Appeals for the small sum involved, and that the order of the Price Administrator will be final as to this estate. I have hopes that some estate of sufficient size will be before some Probate Court which will justify the testing of the really basic question before an Emergency Court of Appeals.

In view of the positive provisions in reference to the Emergency Court I am compelled to concur in the judgment herein in spite of my opinion that the original Act had no reference, direct or remote, to administrators' sales.

I am in harmony with the opinion as given by the Probate Court and the reasons therefor, but must abide by the provisions of the section in reference to the Emergency Court.